Good afternoon. The argued case this afternoon is number 2012-15-32, John T. Minemyer v. R-BOC REPS, Representatives Incorporated. Mr. McAndrews. Thank you, Your Honor. Good afternoon, and may it please the Court. There's a lot of material to cover this afternoon. We have an appeal on behalf of my and Ms. Spears' clients, the defendants. We have a cross-appeal on behalf of Mr. Chalmers and his client, Mr. Minemyer. You may assume that we've read the briefs, all of them, and hit the most critical points. Thank you, Judge Newman. I'll compartmentalize the issue. In terms of the defendant's appeal, the district court erred in two very important respects. First of all, the court erred in denying the defendant's motion for judgment as a matter of law on the issue of non-infringement. Secondly, the district court abused its discretion in barring the defendants from presenting important evidence of the invalidity of the four remaining asserted claims in this case. I say the four remaining asserted claims because earlier on in the litigation, the magistrate judge had invalidated eight of the 12 originally asserted claims based on the very same evidence that the defendants believe is critical and relevant to the invalidity of the four remaining asserted claims. With respect to your second point, do you agree that if there had not been a delay of the trial based on a request by Mr. Minemyer, that your abuse of discretion argument essentially would fail? Judge O'Malley, I wouldn't agree, and here's why. I think there is a distinction, especially given the time constraints that we were placed under. There are two aspects to the delinquency, and this is not a mudslinging contest, but I think in this case, because we're talking about an abuse of discretion, the timing, counsel's action, and the party's actions are very relevant. In this case, we had belatedly produced interrogatory responses. Those interrogatory responses, Mr. Minemyer's responses with respect to his on-sale date, were the cornerstone. They were fundamental to the invalidation, the district court's invalidation of the eight original claims. We have argued that those are also the cornerstone. I think I've used the term, an argument before the district court, the anchor piece of 103 prior art on which the invalidity of the remaining claims would be based. There are two aspects to it, and Judge O'Malley, the reason I said no is that in the first instance, we were up against incredible time constraints by virtue of Mr. Minemyer's delinquency in getting us his interrogatory responses. If we're talking about the circumstances that existed at the time the court ruled, you've got a very high mountain to climb because it's not only an abuse of discretion standard, but there were very specific findings and facts that the trial court made with respect to the impact of any delay from the other side. I think an abuse of discretion is always a tough standard to meet, but I will say that exercising discretion for the sake of discretion does not serve the purpose. I think a determination on the merits, particularly where the four remaining assertive claims that actually went to the jury are truly hanging by a thread based on the record. I know that before this merits panel, we had a motion to stay earlier. There's a parallel litigation in which we're going after the validity based on this very same prior art. It's an important issue. It ought to be reached in this case, the first case, Minemyer 1. But didn't the trial court specifically find that you had the information available to you as of the time of your original invalidity contentions that you really needed to make these assertions as to all the claims? The magistrate judge did not so find, Judge O'Malley, and to clarify the record in that regard, we could not have known as of the deadline for the original district judges, the deadline for the original invalidity contentions because Mr. Minemyer's admissions did not come until almost two years later when he submitted his belated interrogatory responses. Because of that chronology, the four-month belated interrogatory responses, the court relied on the evidence, the admissions that affected two things, the on-sale admission, and then importantly before that, the critical date, and validated the eight original claims. So I guess that's a roundabout way of saying that if we applied the standard that the only thing that mattered was the original date or deadline for invalidity contentions, the court could not have invalidated eight of the originally asserted 12 claims. It's the same evidence that was based on the same chronology. And then a second and final point on the abuse of discretion. There is a difference between barring a pardon for making an argument on summary judgment based on potential prejudice to the opponent and the timing and sequencing. In this case, we simply didn't have that. We didn't have it in the first instance because as we lay out in our briefs, the court expressly, and I think that helps me out to some extent, the court said it was not analyzing or reviewing or considering prejudice to Mr. Minemyer. I think that has to be under these circumstances. It must be part of the analysis. Otherwise, we're retreating into a situation where we have an exercise of discretion simply for the sake of discretion. Elsewhere— Are we supposed to assume then that all of these deadlines and all of the deadlines that are placed into not just standing court orders but local rules, that they become meaningless as long as you can say, well, at the last minute, I didn't really hurt the other guy even though I ignored all the court orders? Absolutely not, Judge O'Malley, and I think that's why we did raise this issue on appeal. We moved for reconsideration before the district court. The patent law is, at least in terms of presiding over the trial, was new to this judge. I think he did a wonderful job on balance. This case has been pending for six years. In this instance, he got it wrong, and he got it wrong on a very, very prejudicial issue. He could have allowed the evidence at trial if not on summary judgment, and I know we make both of those arguments. Either one of them would have allowed us an opportunity to reach this important issue of invalidity of the four dangling claims based on the same anchored prior art on the merits. The federal rules and certainly all of the local patent rules that have been promulgated in the Northern District of Illinois and elsewhere across the country are designed to allow resolution on the merits when possible. Well, the federal rules are also designed to allow the district court to look at how the parties conduct discovery and control and monitor that approach to discovery and deal with it on an ad hoc base, on a case-by-case basis, and that's what the district court was doing. I agree with your characterization of the rules and the purpose of the rules, Judge Locke. Again, and I know we included a chronology in the timeline in our time brief, I think it gives some context. It's a very important issue. We could have reached it. The evidence is there. The prior art on which we relied was there before Mr. Minnemeyer during the patent prosecution process, but it was not relevant to us. The light had not been shed on it. You cited it in your original invalidity contention. We cited some of the art. We did not cite the important 103 combination, or even more importantly, the 102 combination, based on Mr. Minnemeyer's admission at his deposition after we had obtained his belated interrogatory responses. So we moved to infringement? We moved to infringement, Your Honor. The district court erred by denying the motion for judgment as a matter of law in a couple of respects, and I know we have three different categories. First, we have the 16 of the 18 couplers. On this issue, Mr. Minnemeyer, by his own admission, and we've laid this out exhaustively in the briefs, presented no evidence linking the claim elements of the asserted claims to 16 of 18 models of couplers. Well, you say no evidence. I mean, the court found that there was substantial circumstantial evidence. But let me ask you, why is it that you only produced two of the 18 in discovery? We didn't. And this issue had been addressed by the magistrate judge at a discovery hearing. It's in the record. I'm certain it's in the exhaustive record before the court, although the parties didn't focus on it. I went over to Mr. Chalmers' office, and I took pictures of all of the couplers, and we attached those in the post-trial briefing. There was not a sanction that prevented us, or let me put it otherwise, Judge O'Malley. There wasn't a sanction that excused Mr. Minnemeyer, in this case, from offering up proof of 16 of 18 different models where his expert, Mr. Kaiser, according to the Kaiser recipe, admitted that each one of these models and sizes is a different product. Each one of them is subject. I still don't understand your answer to my question. The brief contend, and you didn't dispute, that you only produced two out of 18 in discovery. Is that true or is it not? It's not true. Mr. Minnemeyer did contend that. He belatedly raised that issue. We certainly disputed it. And I dispute it to this day for the reason that I mentioned. So you're saying that your discovery produced all 18. When you had to produce, you produced all 18 couplers. I am saying that we produced, I believe we produced all 18 couplers. And we certainly produced more than the two because I took pictures of them for the very reason of presenting that to Magistrate Hall in the case. And I don't think my colleague, Mr. Chalmers, would dispute that. I visited his office for that very purpose. And in fact, of our pictures attached as exhibits to the deposition, my colleague took of my client, Bob Lundin, where there are pictures of other couplers. Beyond just the two half sections, the orange and the blue that they have in plastic bags here, which were the triplets. I hate to say this, but there is a common thread running through these things. And that is, Mr. Krzyzewski testified that Mr. Lundin, your client, asked him to make a coupler just like the Lozon coupler. He confirms that every coupler made for BNC has these one-sided threads, that the thread shape has never changed. Even without all of those 18, you still have the parameters testified to. The court has this information. To your first point, Judge Wallach, the evidence comparing and using the term Lozon coupler, and I think aptly so given the briefing, that's Mr. Minimier's coupler. There is long-established law, and there's a good reason for it, that the comparison is not between my client's accused couplers and Mr. Minimier's commercial embodiment. That's putting aside the fact for the moment that there was no testimony at trial at all, expert or otherwise, that Mr. Minimier's Lozon coupler, if this is the Lozon coupler, meets each and every element of his claim. That's part of the reason that we have the rule that copying is of no import to the issue of infringement. As to the element-by-element analysis, Mr. Krajewski's admission, Mr. Krajewski testified to the jury and the judge on examination and cross that he had no idea what the measurements were. Assuming he said there was a one-sided thread, there was no testimony in the record concerning the angle of this one-sided thread, which is but one of at least 13 or 14 discrete elements in the assertive claim 12, Judge. So the point is… There is testimony about the angle, is there not? There is testimony from Mr. Minimier's expert witness, Mr. Kaiser, concerning the angle, the rear-facing angle of the thread, but that is with respect to the two section pieces. Would you mind handing those to me if I have it? This is the extent of the evidence that Mr. Minimier put on in terms of infringement. It's a section of the blue inch and a quarter and the orange inch and a quarter. These are the parts for which Mr. Kaiser, Mr. Minimier's expert, who also happens to be his manufacturer, sectioned and provided measurements. The only measurement on which the jury could have based its finding of infringement with respect to claim 12, Your Honor, is the 10-degree measurement that Mr. Kaiser offered. There is no link at all between that 10-degree measurement and the 16 of the 18 couplers, but more importantly, there is no element-by-element follow-through with respect to all of the other elements of the claim. Now, Mr. McAndrews, we've exhausted your time, but I've been listening. I haven't heard you tell us where the jury verdict was unsupported. You're asking us to make a number of findings. We will restore some rebuttal time, but let's hear from the other side now. I appreciate that. Thank you, Judge Newman. Okay, Mr. Chalmers. Thank you, Judge. I appreciate the court. Just briefly, the extent of the evidence that's described by Mr. McAndrews as being the two couplers in evidence that Mr. Kaiser tested is not accurate. It's also not accurate to say that he argued before the district court. We'll hear that they produced only two of the 18. In fact, over the course of the litigation, they produced these, which were before the jury. There are ten there. Here's another one of theirs that they produced. And then two of these. So there were a total of 13 different couplers accused before the jury that the jury took back into the room. So it wasn't just the two that Kaiser tested. Why did he only test two? Why did he? Because I think we only had about four or five at the time the experts were doing their work early in the case. Later, as the case went on, they did a redesign in 2009, two years in, where they changed the outside to a waffle pattern, and they started producing more before and after couplers as part of that demonstration to us. But we had two discovery requests. They were appended to our J-Mall response, I believe, where we called them out on ignoring those requests throughout the case. And what you see on this table is the absolute maximum we ever received. Did you ever go to the magistrate judge and ask him to order that all 18 be produced? No, we didn't, because we had Kaiser locked in. We had the testimony with Krajewski, and these were the only elements of the claims that were in dispute, and the point was, were they approximately perpendicular teeth, and did they have the sealing lamp? Those were the only disputed elements in the case. They weren't contesting, for example, that the thing had threads or it had two ends or a stop in the middle. None of that was relevant, although those are portions of the claims at issue. So the only disputed issues were, were the teeth approximately perpendicular? Krajewski admitted that. And further, Bachman admitted that all of his couplers contained the same threads. Mrs. Lundeen testified that she had all the Lozon sizes made her sizes. Of course, you have the copying element in the case, which isn't describing the infringement so much as describing how we got here, how these things were created. They weren't created out of the blue. They weren't independently derived. You never heard anybody come in from the defense side and say, oh, yeah, these two, definitely we copied those, but these other 16, they're totally different. We derived them from something else. We made it up on our own. No, that wasn't the evidence. Do you agree that there was no evidence in the record, as your friend on the other side contends, that the Lozon couplers actually practiced the patent? No, there was evidence to that effect. Mr. Minnemeyer described, in those two features that we care about, the lamp teeth, he described how he came up with those and how those operate in his coupler. Mr. Kaiser, who was our manufacturer for many, many years, and the expert who went through the infringement analysis, he said, okay, all of those features are present in the accused coupler. They also, in my view, copied it because he compared the two products, and so by doing that, they're both within the scope of the patent. So that's the evidence that supports the notion that what they copied was a patent convention. Now, we thought we had a quintessential willfulness case here, willful infringement case. Every defense, every issue, every argument, every scrap of paper went to the jury in this case, and they resolved every issue in favor of the plan. Two things went wrong on J Maul. The court didn't give any deference to that verdict at all when it came to willfulness. Only with respect to the objective prong, correct? Correct. He only reversed on that prong. Well, we've got the issue with Bard now that says that that is a legal issue. Well, indeed. So no deference, the court's not to give deference to the jury on that issue, is it? Well, we don't read Bard that way. We read Bard as invoking the traditional concepts of deference when mixed questions of law and fact go to juries, which they do every day, most particularly with obviousness. Nothing wrong with sending that to the jury. Even Bard says as much. But when you do, there are consequences, and the consequences are that if the judge reviews the record, finds substantial evidence to support the legal conclusion, then he has to make that legal conclusion and agree with the way the jury came down on it. The only way that's going to change is if there's a lack of substantial evidence somewhere along the line. And then this court's de novo review of that is the same as before, too. It's not a retrialable case. It's applying the same standard as the district court to the findings of the jury, and if they're supportive, that's it. You're done. So we don't see great conflict there. Bard doesn't, I think, empower the district judge's 13th juror to review the whole record, particularly when the facts are facts. They're jury-disputed issues of fact. There's nothing like the Powell v. Home Depot situation where you've got, you know, the jury only hears half the facts. The judge hears the rest. So you've got a tension there, how you decide willfulness. In our case, there's no tension. It all went to the jury. I don't think there's any dispute. The standard they were given was in accordance with the law. But the second, apart from the procedural issues we have, is the substantive test the judge applied seems awfully low, and it basically lets them off on a technicality if all they do is articulate a defense. It doesn't have to be backed up. It doesn't have to be supported. Well, I mean, rightly or wrongly, whether you agree with the case law or not, our case law says that if there is an objectively reasonable defense, regardless of how bad your behavior might otherwise be, you don't satisfy that objective prong. Isn't that right? Absolutely. And what the court concluded that is at least as it relates to the issue of perpendicular, the court said, look, the jury could have gone either way on that question, whether or not substantially perpendicular is whether 80 percent, 80 degrees satisfies that. The court specifically said, in finding in your favor on that point, that that's one the jury could have gone either way on. And once the jury could go either way on it, why is that not a reasonable defense? It's not reasonable because it was unsupported, undisclosed, and here. Backman gave that testimony. Mr. Backman opined on re-cross-examination, for the very first time the issue comes into the case, that in his opinion, approximately perpendicular would be no more than 89.5 degrees. Okay, that's what he said. Never before disclosed in the case. They have an expert in the case who never did testify, but he was prepared to opine that 83 degrees was approximately perpendicular. A major conflict there. Backman himself had written a document describing a 1.54 inch coupler as approximately 2 inches, so there's no doubt that he ginned up this opinion in the middle of trial. After Prochecki, the molder manufacturer, had admitted they were all approximately perpendicular. Didn't Mr. Minnemeier himself in deposition say a 10 or 15 degree swing, that's a big difference? Well, he's describing in his deposition what was working for him. He's making it. He's trying to decide what works. He's not interpreting the patent. Mr. Backman's testimony is flat-out claim construction, and we were done with that. But as you see, the defense constantly tries to bring claim construction back into the case. The difference with Backman is he says, I think approximately perpendicular, for me, skill in the art, means 89.5 degrees. If that's done, we're talking infringement, and our expert, Kaiser, said the threads of the B and C are approximately perpendicular. That's infringement. Prochecki, the manufacturer, says all my threads are approximately perpendicular. That's an infringement. You can't have claim construction dropped in and re-re-crossed at a trial for the very first time and expect that to be credible. Did you get a judge's check at that point? Well, I mean, judges would not exclude much of anything from the case. It's too late. People have been talking about approximately perpendicular. They got up, put the inventor on the stand, had him talk about significantly different and tried to influence the jury that way, and nobody was buying it. So the objection, sure. But I think... Wait, wait, wait. It was not made. No, it was not made. Absolutely not made. But I think in the retrospective analysis of the record of the case, this court and the district court should have gone behind the music, scratched behind that defense. It's not enough to say that reasonable minds could differ. That's just a theory. That's platitude. In this case, that testimony had zero support, and if you look at it, it was plain construction. So it had no place in the trial. So you should have objected at that point. Well, but does that change the character of the defense, whether I object to it or not? I don't know. I mean, I objected to them bringing in invalidity stuff. It changes the character of the record. Well, I guess the court can rule that way, that whatever evidence sneaks in without an objection will define itself as credible and reasonable. It's called preserving the record on appeal. Well, I just view the question to be answered in a different light. It's not so much an evidentiary one. It's a quality. And the reasonableness of these defenses is really the question that this court has been trying to grapple with. And, you know, I think it's more than you know when you see it. It has qualities to it, like you know what it takes to mount a defense in an infringement case. You identify it. You raise it in the case. You disclose it. You back it up. You get an expert if you need it. And you present it to the jury and you preserve it and things like this. And in looking at the defenses in this case, first you want to look at what's not there because what's not there is very important. You don't have an invalidity defense. You don't have any advice of counsel. You don't have any, you know, safe harbor claim construction where they don't infringe. You don't even have a closed case. The jury came back in less than three hours. So what you do have are these three statements, contrary arguments as the judge described them, and the defendants seem happy with that characterization. They concern the burden of proof. Flint didn't meet his burden of proof. So if I articulate that in terms of BARD, what reasonable litigant can realistically expect to succeed on a burden of proof defense? Objectively speaking, that's not even possible because a burden of proof defense doesn't exist. And then when they have their contrary arguments, you really ought to look and see whether they're supported by record evidence, whether they're self-contradictory given the witness's other testimony or documents, which is blatantly true in this case, whether they had any support from their expert, whether, like with Mr. Backman, the expert contradicted him. The expert's report isn't accurate. And so you really need to look beyond surface, which I think the judge did, and in doing so, saying that if there's a surface appeal, that, you know, surface reality to it, that that's all the federal circuit seems to require, and we just don't think so. Before you sit down, let me ask you a question about the abuse of discretion issue and the barring the invalidity defense as to that remaining claim. Even if you were correct that the court was within its authority to create the limitations it created when it was on the eve of trial, given that there was a huge delay before the case actually went to trial based on plaintiff's own request for a delay, wasn't it an abuse of discretion not to rethink that at that point because there'd be no prejudice? No, he clearly found there would be prejudice no matter what the time frame was. At the time these events occurred, the trial date was September 21, 2009, and so what you're looking at are July 22, summary judgment motion, July 20 expert report, and those are the ones they now rely on to say this is our disclosure. Okay, but discovery's closed. You know, how do you respond to a summary judgment motion when there's a new priority and all this stuff that you've never seen before? You know, obviously you've got to put that off. You've got to conduct discovery on it, get an expert on it, come back, rebut the motion, get a new expert report in, all this stuff. So it would just never end, and part of their trouble was they could never get their story straight on what the invalidity case was. You know, they filed the preliminary contention, said nothing about Claim 12, and the prior art with respect to Claims 2, 3, and 4 was some other stuff that we never saw again, and then when the trial date was, as I just said, the time they filed the motion for summary judgment and their expert report, trial's September, they filed this two months before, but they never filed the 282 notice at that time. They didn't file the 282 notice until after the trial date had been moved two months to November, and then they filed it October. So it's like it was completely arbitrary when they filed what they filed what they relied on, and it all kept changing, and the judge, I think, demolished them on the idea that there was some kind of change in the landscape or new anchor, because the expert's analysis didn't match the summary judgment analysis, didn't match the 282 analysis, so it was all over the place. So no, he didn't abuse his discretion to answer your original question. The argument fails whether there was an extension or not. The argument is only made possible because there were later delays in the case, and I think it would be grossly unfair to just continue to allow, simply because more time presents itself later, to allow whatever parties want to redo to redo it, because at any time, there's going to be additional work and prejudice to the other side. They're going to have to change the case, deal with the new evidence, and that's not going to change. You're going to do that now or later. Okay, let's hear from the other side. I know you'd ask to save some time on the cross-appeal, so let's see what we have for Mr. McAndrews. Thank you for the additional time, Judge Newman and the panel. You had asked about the lack of evidence or our argument concerning the lack of evidence that would support the jury's verdict on the issue of infringement. We need to know why you feel that this jury verdict, which is entitled to significant deference, cannot stand. I think in the first instance, it cannot stand because of Mr. Kaiser's admissions, and that is as to the 16 of 18 models. He didn't measure anything else. He didn't section anything else. And Judge Cole cut me off during my examination of Mr. Kaiser on the point, and we've quoted it in the record. He said he didn't analyze anything else. He's not opining on anything else. What that leaves is the rest of the record, and there is nothing else with the exception of the bootstrap argument on copying. And I would submit that... Did you... Was there any affirmative evidence that the threading in the couplers was different from size to size? When we're talking about size to size and model to model, Judge O'Malley? Yes. The defendants did not present evidence of 16 of 18 models. No. Okay, so there was no expert that said they were different. There was no one from your side that said anything other than things that would imply they were the same, correct? That's right. It never got into the record because we didn't present the expert testimony, but I think the experts were somewhat in agreement on the point. What I mean by that is our expert had said that the rear face of the couplers is no more than 10, so 10 and then some measured well beyond that. It comes back to the point, that was for them to decide, and in light of what I call the Kaiser recipe, which is Mr. Kaiser's explanation as a manufacturer, that there are 13 different variables that can significantly, and I repeated that during cross at trial, significantly affect the outcome of the manufactured product. That is why you have to take a look at each of these models, and it's also why you have to do it. But if your expert conceded that none of the models had greater than 10%, and the jury concluded that a model at 80% was infringing, then how is that not sufficient circumstantial evidence that the rest of the models were infringing? I don't want to misspeak on it. We're talking about evidence that never went in, but our expert said that at the greatest angle, the closest to perpendicular, was 80 degrees and beyond. So if you have a 75 degree angle, of course, that gets into the 10 to 15 degrees that Mr. Minnemeyer testified to at his deposition, which is significantly different from the claim language that I had in front of him. In fact, he wasn't talking about the range at his deposition of what works for him. I have a claim right in front of him, and I was specifically talking about the term approximately perpendicular. Let me ask you, because I think that your friend makes a pretty good point with respect to a cross-appeal. And the point that he's making, as I understand it, is that when you look at whether or not a defense is objectively reasonable, you're not supposed to look to whether or not the plaintiff and the plaintiff's counsel might have been a little weak in their presentation of proofs during the course of the case, but whether at the time you're infringing you had an objectively reasonable defense. So if the only reason your defense was reasonable is because maybe they forgot to put in certain proofs of certain decouplers, but there was no evidence that those couplers were actually different, then how is it objectively reasonable? On that point, one that I was getting to, at this moment, and we have argued to this panel, 10 degrees, or 80 degrees rather, because we're subtracting off of 90, which is perpendicular. As a matter of law, 80 degrees is not approximately perpendicular. You didn't even cross-examine their expert on that point, did you? I cross-examined one of Skilnyard and the named inventor on the patent on that very point, and he confirmed, before he had retained an expert, precisely what I, as counsel of record, believe in the case. But did you cross-examine the expert a try? On whether or not 10 degrees was approximately perpendicular? Yes. No, because I heard him offer it's a Dixit on the point. But you didn't cross-examine him on it, did you challenge it under Daubert then, or move to strike the testimony? We did, repeatedly, in motions, on summary judgment, in fact, that was one of the interim summary judgment motions that your Honor referred to it earlier, where Judge Cole actually considered the issue, and he said on that issue, it could go either way. We were arguing the point at the time, your Honor, that 10 degrees can't possibly be, based on all sorts of different factors. Just one of them was which, Mr. Minnemeyer's testimony, based on the three degrees that he used. But you stipulated to the claim construction, what the court said, is what you were actually doing is trying to reopen claim construction, because you were asking for a construction that said that it can't be 10 degrees. No, I think if that were the standard that applied, and we argued this to Judge Cole, once you have had claim construction in a case, you could never go back on summary judgment and say that an accused product doesn't meet the limitation if it involves a numeric range. We tried to make that point. We simply went back and said, under all of the circumstances, based on the record evidence, and the deposition, and the prosecution history, we weren't arguing claim construction. We were saying that at a certain point, you are outside of that, and it doesn't always require expert testimony on it. In fact, we didn't get any in this case. Two other very quick points. Very quick. We're well over time. On infringement. One more sentence. Yes. No evidence of the sealing surface. Well, you can't raise new points that they haven't had the chance to consider on rebuttal. We'll have to take your additional points on the brief. Certainly. The final thought, a submarine can be watertight, but that is not any evidence. It's not direct, and it's not circumstantial that the door between the galley and the captain's quarters, internal to the submarine, is watertight. And that's this issue between whether or not evidence that the couplers as a whole were fluid tight is circumstantial evidence that the alleged and claimed sealing surface of Claims 2, 3, and 4 is. It is no evidence at all. We'll have to review the record to be sure. Your stories are not compatible, each with the other. We will do our best to figure it out. Thank you, Judge Newman. And if there are no additional... I'll just say if that was one more sentence, it was the most run-on sentence I've heard for a while. There are a few commas and perhaps some periods in there. And a couple of semicolons. Thank you. We didn't get into the cross-appeals, so I think we'll have to leave that on the brief. Very well. All rise.